NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0440n.06

No. 23-5618

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Sep 29, 2025
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
|     Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| MARQUISE GRAHAM, | ) | DISTRICT OF TENNESSEE |
|     Defendant-Appellant. | ) | OPINION |
| | ) | |

Before: COLE, GIBBONS, and BUSH, Circuit Judges.

**BUSH, Circuit Judge.** Defendant-Appellant Marquise Graham pleaded guilty to a single count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). The district court sentenced Graham to 192 months' imprisonment based on a mandatory minimum enhancement under the Armed Career Criminal Act (ACCA). Graham now appeals his sentence. We **AFFIRM**.

**I.**

In August 2021, law enforcement responded to an alleged shooting at a Super 8 Motel in Chattanooga, Tennessee. At the scene, witnesses provided a description of the shooter's vehicle. Police tracked down the vehicle and attempted a traffic stop, only to have Graham emerge from the vehicle and flee the scene. While fleeing, Graham tossed aside a black bag. After apprehending Graham, officers searched the bag and found a "loaded SCCY, Model CPX-2, 9-millimeter pistol and debit/credit cards" with Graham's name on them. R. 25, Def.'s Factual Basis, PageID 50–51.

The United States charged Graham with one count of being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1). He pleaded guilty to that crime on November 16, 2022. After Graham's guilty plea and before his sentencing, the probation office prepared and filed a Presentence Report (PSR). The PSR detailed Graham's criminal history and noted six previous violent felonies that could serve as ACCA predicates to support an enhanced sentence. We list the details of these crimes here:

1. Aggravated Burglary: March 31, 2015; Location: 4317 Sunset Avenue, Chattanooga, TN, 37411;

2. Robbery: May 8, 2015; Location: 2200 14th Street, Chattanooga, TN, 37404;

3. Aggravated Burglary: October 11, 2015; Location: 1709 Vance Avenue, Chattanooga, TN, 37404;

4. Aggravated Burglary: October 27, 2015; Location: 410 Derby Street, Chattanooga, TN, 37404;

5. Aggravated Burglary: October 27, 2015; Location: 1607 Chamberlain Avenue, Chattanooga, TN, 37404;

6. Aggravated Burglary: November 9, 2015; Location: 507 Spruce Street, Chattanooga, TN 37404.

Each of these crimes involved a different victim and took place at a different location within Chattanooga. Graham was convicted of all six crimes on April 18, 2017.

Graham's sentencing based on his November 16, 2022 plea for the above listed crimes occurred in June 2023. At that sentencing, Graham objected to his potential ACCA-enhanced sentence but did not assert that the PSR misstated any facts relating to his previous convictions. Under the ACCA, enhanced mandatory minimum sentences apply to felons found in possession of a firearm who have been found guilty of three or more "violent felon[ies] or . . . serious drug offense[s], or both," that were committed on "occasions different from one another . . . ." 18 U.S.C. § 924(e)(1). Graham does not dispute that his prior convictions for burglary, robbery, and aggravated burglary count as violent felonies under the ACCA.

The district court found that the PSR accurately described Graham's six previous violent crimes. It then determined, based on the PSR, that each of Graham's previous violent felonies occurred on different occasions. This meant that Graham qualified as an armed career criminal under the ACCA. The district court then handed down an ACCA-enhanced sentence of 192-months' imprisonment. Graham now appeals his ACCA-enhanced sentence.

**II.**

In 2024, the Supreme Court held that juries, not judges, must determine whether prior offenses were committed on separate occasions. *Erlinger v. United States*, 602 U.S. 821, 833–35 (2024). Before *Erlinger*, judges made the different-occasions determination during sentencing based on the information found in *Shepard* documents, like the PSR. *See United States v. Hennessee*, 932 F.3d 437, 442–43 (6th Cir. 2019).[1] Since *Erlinger*, we have considered several appeals concerning sentences that suffered an *Erlinger* error based on judicial factfinding. Those decisions resolve most of Graham's case. Graham presents two arguments under *Erlinger* and a separate one based on the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution. We reject these arguments and affirm the district court.

**III.**

Although he acknowledges that circuit precedent forecloses this argument, Graham first claims that the *Erlinger* error in his case was structural—a type of error that always requires reversal. *United States v. Campbell* decided that *Erlinger* errors are not structural, so Graham's

---

[1] *Shepard*-approved documents are those approved of in *Shepard v. United States*, 544 U.S. 13, 20–21 (2005), and its progeny, that help "to determine whether a defendant's prior crimes satisfy the ACCA . . . ." *Hennessee*, 932 F.3d at 442 (citation omitted). These include the "charging document, written plea agreement, transcript of plea colloquy, jury instructions, judgment of conviction, or other record of comparable findings of fact adopted by the defendant upon entering a guilty plea . . . ." *Id.*

argument fails. 122 F.4th 624, 630–31 (6th Cir. 2024); *see also United States v. Thomas*, 142 F.4th 412, 417 (6th Cir. 2025). The *Erlinger* error here was not structural, so we review under the harmless error standard.

For harmless error review under the different-occasions clause, errors are harmless only "if the court can conclude beyond a reasonable doubt that the jury would have found the defendant's offenses occurred on different occasions." *United States v. Durham*, Nos. 23-5162/5173, 2025 WL 2355998, at *2 (6th Cir. Aug. 14, 2025) (per curiam). Applying harmless error review, we conclude beyond a reasonable doubt that the jury would have found that Graham's predicate crimes took place on three or more different occasions.

Graham first contends that the *Shepard* documents, including the PSR, cannot serve as the basis for a harmlessness finding because these documents are per se unreliable under *Erlinger*. As Graham acknowledges, we previously rejected this argument. *See Thomas*, 142 F.4th at 418–19. *Shepard* documents may still be used to conduct a harmless error review relating to the different-occasions requirement unless the appellant provides a reason to "question the reliability of the PSR's findings." *Id.* at 419; *see also United States v. Geerken*, 506 F.3d 461, 467 (6th Cir. 2007) ("When a defendant fails to produce any evidence to contradict the facts set forth in the PSR, a district court is entitled to rely on those facts when sentencing the defendant.").

Graham provides no reason to doubt the reliability of the PSR. Graham has pointed to issues with *Shepard* documents generally, but he has not shown that any of his grievances apply to this particular PSR. And he has never claimed, either here or at the district court, that the dates or locations listed in the PSR are inaccurate. Because we have no reason to doubt the facts of the predicate crimes as they are described in the PSR, we use the PSR as the basis for our review.

**IV.**

Graham next asserts that because real-world juries have concluded that crimes taking place months apart were still a single occasion, we cannot conclude beyond a reasonable doubt that a jury in his case would not have done the same. This mistakes the analysis. As *United States v. Ballinger* explained, we look to what a reasonable jury would do and not what a jury in another case actually did. 2025 WL 2715334, at *3 (6th Cir. Sep. 16, 2025) ("This inquiry does not turn on the empirics of what a specific jury did in another case, but on what a *reasonable* jury would have done here.").

We conduct our harmless-error review based on the factors laid out by the Supreme Court and instead ask whether we have a reasonable doubt about what a reasonable jury would have done in Graham's case. *See United States v. Kimbrough*, 138 F.4th 473, 476–77 (6th Cir. 2025). The Supreme Court has instructed that determining an "occasion" under the ACCA requires a multi-factored analysis. *Wooden v. United States*, 595 U.S. 360, 369 (2022). To perform this analysis, we examine "the timing, the locations, the character, and the relationship of the offenses." *Campbell*, 122 F.4th at 629. Timing and location will often be dispositive, but the "other factors can inform the analysis" as well. *Durham*, 2025 WL 2355998, at *2.

Most of the analysis here concerns whether Graham's March burglary was a separate occasion from his November burglary. After considering the factors, we have no difficulty concluding beyond a reasonable doubt that these crimes occurred on separate occasions.

Graham committed six crimes that could serve as ACCA predicates: aggravated burglary on March 31, 2015; robbery on May 8, 2015; aggravated burglary on October 11, 2015; two aggravated burglaries on October 27, 2015; and aggravated burglary on November 9, 2015. Graham committed the first two of these crimes thirty-eight days apart: an aggravated burglary in

March and a robbery in May. This gap almost definitively shows that these crimes took place on separate occasions. After all, courts "have nearly always treated offenses as occurring on separate occasions if a person committed them a day or more apart . . . ." *Wooden*, 595 U.S. at 370. Graham does not appear to contest that his robbery predicate took place on a different occasion from his burglaries. But he bases this conclusion on the character of the crime. *See* Appellant Br. at 9 (acknowledging that robbery is "different from burglary"). From this, we establish that Graham's robbery in May was a different occasion from all other crimes. So we are left with the question of whether any of Graham's burglaries took place on two or more different occasions.

Graham argues that his March burglary was committed on the same occasion as his October and November burglaries because they share similar features, and a reasonable jury could conclude that they were part of a single criminal venture. Even if we set aside that the robbery was an intervening occasion,[2] Graham's March burglary took place almost eight months before his string of burglaries culminating in November.[3] No circuit court has found harmful error with a gap this long between predicate crimes. *See Ballinger*, 2025 WL 2715334, at *4 (collecting cases). And we will not upset this trend here.

The character of Graham's burglaries also weighs in favor of harmless error. Graham burgled six different victims at six different locations. A lack of repeat victims supports different occasions. *Thomas*, 142 F.4th at 418.

---

[2] A distinct crime committed between similar crimes favors separate occasions. Nothing in the record suggests that Graham's robbery shared a common scheme with his burglaries. And because the robbery is situated between two burglaries, the March burglary is more likely a different occasion than the later ones. Graham's argument to the contrary suggests that an intervening occasion took place in the middle of a single, unbroken occasion. This reading does not fit well with the plain language of the ACCA.

[3] We need not decide whether the October and November burglaries were separate events because each of these was a distinct event from the March burglary and May robbery.

Given the weight of authority, we could likely decide this case on timing and character alone, *see Wooden*, 595 U.S. at 369–70, but we also look to location to see if it moves the needle in either direction. This factor considers whether the predicate crimes were "components of the same criminal event," with farther apart crimes being less likely to share a criminal event. *Wooden*, 595 U.S. at 369. Each of Graham's crimes took place within Chattanooga's city limits, but at different locations. Each crime was less than two miles apart from the others except for one—the March burglary. This burglary took place 3.6 miles away. This distance does not weigh strongly for or against harmless error on its own. *See United States v. Santana*, 141 F.4th 847, 853–54 (7th Cir. 2025) (stating that "four miles is not so far as to be controlling by itself"). But given the close proximity of Graham's other crimes, the relative distance of this burglary makes it look less like it was part of the same criminal event. Graham committed four burglaries and a robbery all within 1.6 miles of each other. Yet for the March burglary, Graham went further afield. This provides some support (though not a significant amount) that the March burglary was a different criminal event from the later burglaries. Although this factor does not weigh strongly for or against harmless error on its own, it is worth noting—if only to point out that looking at each individual distance in isolation does not always tell the whole story.

In any event, location does nothing to overcome the weight of the timing and character of Graham's crimes. Graham's burglaries were separated by an eight-month gap and a distinct crime of robbery. This timing, combined with Graham's burglaries being at distinct locations against distinct victims, compels us to find harmless error here. We conclude beyond a reasonable doubt that a reasonable jury would find that Graham's predicate crimes took place on at least three different occasions.

## V.

Finally, Graham argues that his ACCA enhanced sentence violates the Double Jeopardy Clause. He did not raise this issue at the district court, so we review for plain error. *United States v. Johnson*, 79 F.4th 684, 703 (6th Cir. 2023). Graham's argument that he sufficiently raised the issue under *United States v. Ehle* is unpersuasive. 640 F.3d 689, 694 (6th Cir. 2011). At sentencing, he made arguments that he was entitled to jury findings on his predicate crimes and pointed out that the United States changed procedures for handling ACCA enhancements. But Graham did not make arguments relating to the Double Jeopardy issue with "that reasonable degree of specificity which would have adequately apprised the trial court of the true basis for his objection." *United States v. Bostic*, 371 F.3d 865, 871 (6th Cir. 2004) (quoting *United States v. LeBlanc*, 612 F.2d 1012, 1014 (6th Cir. 1980)). This issue does not stem from *Erlinger*, and Graham could have made his argument before the district court if he chose. *United States v. Sain*, No. 22-6131, 2025 WL 801366, at *2 (6th Cir. Mar. 13, 2025) (per curiam). Plain error review applies, and Graham cannot show plain error.

Graham makes nearly identical arguments to those made by the defendant in *Thomas*, 142 F.4th at 420–21. He tries to argue based on *United States v. Bell*, that after his guilty plea was accepted, the government could not add the unindicted ACCA enhancement. 37 F.4th 1190, 1194, 1198 (6th Cir. 2022). *Thomas* already addressed this issue, stating that *Bell* dealt with a "unique factual circumstance," and it does not apply in this context. 142 F.4th at 422. Because *Thomas* rejected the Double Jeopardy argument in the *Erlinger* context, even if a Double Jeopardy problem did exist here, we cannot conclude that it was "obvious or clear," *Campbell*, 122 F.4th at 634 (citing *United States v. Johns*, 65 F.4th 891, 893 (6th Cir. 2023)), particularly when Graham does

not point to any binding precedent on this issue.  *See United States v. Amos*, 501 F.3d 524, 529 n.2

(6th Cir. 2007).

Graham's Double Jeopardy argument fails.

**VI.**

For the foregoing reasons, we **AFFIRM** the judgment of the district court.