**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 22-4576**

---

UNITED STATES OF AMERICA,

> Plaintiff – Appellee,

v.

MANGER TOBIAS BLACKMON,

> Defendant – Appellant.

---

Appeal from the United States District Court for the Middle District of North Carolina at Greensboro.  Thomas D. Schroeder, District Judge.  (1:22−cr−00039−TDS−1)

---

Argued:  February 12, 2026                                  Decided:  March 5, 2026

---

Before DIAZ, Chief Judge, and WILKINSON and HEYTENS, Circuit Judges.

---

Affirmed by unpublished opinion. Judge Wilkinson wrote the opinion, in which Chief Judge Diaz and Judge Heytens joined.

---

**ARGUED:**  Tiffany T. McGregor, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Greensboro, North Carolina, for Appellant.  Julie Carol Niemeier, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina, for Appellee.  **ON BRIEF:** Eric D. Placke, Interim Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Greensboro, North Carolina, for Appellant.  Clifton T. Barrett, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

WILKINSON, Circuit Judge:

Manger Blackmon has been convicted of dozens of crimes. Among them are three violent felonies: a common law robbery from 2003, an assault by strangulation from 2008, and a breaking and entering with intent to injure an occupant from 2015. The district court judge, after finding Blackmon committed these offenses on different occasions, deemed him an "armed career criminal." Doing so triggered a mandatory minimum sentence of fifteen years' imprisonment. *See* 18 U.S.C. § 924(e)(1).

The Supreme Court has since held that defendants are entitled to have a jury resolve this occasions inquiry. *Erlinger v. United States*, 144 S. Ct. 1840, 1852 (2024). On appeal, Blackmon claims he might not have pled guilty had he known about this right. But any jury would have readily agreed with the district court's straightforward analysis, and Blackmon never withdrew his plea or challenged the facts underlying his convictions despite knowing that both set the stage for his enhanced sentence. Seeing no reason to depart from analogous cases holding this type of error to be harmless, we affirm.

I.

In 2021, police arrested Blackmon for violating the conditions of his pretrial release in a state proceeding. During the arrest, they found two bullets on his person and two loaded handguns nearby. Those items were problems due to Blackmon's extensive criminal history, particularly regarding acts of violence.

Three such offenses bear mention: First, in 2003, Blackmon broke into the home of S.H., punched her in the face, and stole some of her property. He also stole property from J.H. That all led to his conviction for (among other crimes) common law robbery, a felony.

3

Second, in 2008, Blackmon squeezed J.H. around the neck, restricting her ability to breathe. That led to his conviction for felony assault by strangulation. Third, in 2015, Blackmon struck M.R. in the forehead with a door as he broke into her home. That led to his conviction for felony breaking and entering with intent to injure an occupant.

Returning to his 2021 arrest, Blackmon was charged as a felon in possession of a firearm and ammunition. *See* 18 U.S.C. § 922(g)(1). The indictment added that Blackmon had three prior convictions for violent felonies or serious drug crimes, each committed on a separate occasion. *See id.* § 924(e)(1). The latter, if true, rendered him an armed career criminal subject to a mandatory minimum sentence of fifteen years in prison. *Id.*

Blackmon pled guilty to being a felon in possession. During his plea hearing, the district court told Blackmon that it would determine at sentencing whether he qualified as an armed career criminal. Blackmon then confirmed that he understood the statutory sentencing range applicable if he did so qualify, as well as if he did not. The district court also verified that Blackmon understood and discussed with counsel his written plea agreement, which explained how his conviction created the possibility of a fifteen-year minimum sentence.

The resulting presentence report labeled Blackmon an armed career criminal. To do so, it reasoned that the three previous offenses above qualified as violent felonies committed on different occasions. Following this designation, the report calculated a Sentencing Guidelines range of 180 to 188 months, which reflected a three-level reduction for Blackmon's acceptance of responsibility. *See* U.S. Sent'g Guidelines Manual § 3E1.1

(U.S. Sent'g Comm'n 2021). Without that reduction, his Guidelines range likely would have been 210 to 262 months. *See id.* ch. 5, pt. A.

At sentencing, the district court adopted this presentence report without change and treated all its contents as findings of fact. Immediately afterward, the government explained its recent policy of conceding that juries, not judges, should assess whether predicate offenses occur on different occasions. At the same time, the government clarified that then-valid Fourth Circuit law authorized judges to make the determination themselves.

Blackmon, for his part, made no objection to the presentence report. Rather, when asked about the government's qualm above, he stated he "would leave [the issue] up to the [c]ourt" but reserved his right to appeal it. J.A. 52.

The district court thus decided the matter itself, agreeing with the presentence report that Blackmon committed three violent felonies on different occasions. It accordingly sentenced him to fifteen years in prison.

Blackmon appealed. This court held his case in abeyance pending another panel's decision about the constitutionality of judges answering the occasions inquiry. *See United States v. Brown*, 67 F.4th 200 (4th Cir. 2023), *vacated*, 144 S. Ct. 2712 (2024). And after the Supreme Court specified that there is a right to a jury on this score, *see Erlinger*, 144 S. Ct. at 1852, the other panel, on remand, held that we review judge-made occasions findings for harmless error, *see United States v. Brown*, 136 F.4th 87, 96 (4th Cir. 2025). This court then lifted the abeyance on Blackmon's appeal.

5

## II.

The Armed Career Criminal Act ("ACCA") sets a fifteen-year sentencing floor for possession of a firearm or ammunition as a felon with three prior convictions for certain crimes "committed on occasions different from one another." 18 U.S.C. § 924(e)(1). Blackmon's appeal hinges on the district court's application of this "occasions clause."

### A.

The Supreme Court has twice of late clarified how to approach this clause. First, in *Wooden v. United States*, 142 S. Ct. 1063 (2022), it relied on the ordinary meaning of "occasion" to conclude that the occasions clause demands a "multi-factored" analysis into the timing, proximity of location, and character and relationship of the defendant's predicate offenses. *Id.* at 1069–71. Second, in *Erlinger v. United States*, 144 S. Ct. 1840, it determined that the Fifth and Sixth Amendments require a jury—not a judge—to resolve the occasions inquiry "unanimously and beyond a reasonable doubt." *Id.* at 1852.

After this latter decision, our court held in *United States v. Brown*, 136 F.4th 87, that "*Erlinger* error[s]" are reviewed for harmlessness. *Id.* at 96. That is, when such an error "does not affect substantial rights," we "disregard[]" it. Fed. R. Crim. P. 52(a). For a defendant who never went to trial, like Blackmon, we affirm if the government proves that the error made no difference; in other words, it must show beyond a reasonable doubt that the defendant, had he been advised of his jury right, "would have nonetheless waived that right and admitted as part of his guilty plea that his prior offenses were committed on different occasions." *Brown*, 136 F.4th at 97. The government has easily met this burden here.

6

B.

Consider first the strength of the evidence supporting the ACCA enhancement—the heart of our harmless-error review in the *Erlinger* context. *See id.* at 98. Blackmon's "case is certainly one of the straightforward ones." *Id.* at 99. Just look at when he committed his predicate crimes: 2003, 2008, and 2015. As the Supreme Court wrote in *Wooden*, predicate offenses "have nearly always" been treated "as occurring on separate occasions if a person committed them a day or more apart." *Wooden*, 142 S. Ct. at 1071. The yearslong gaps here come nowhere near what the Justices envisioned as close calls. *See, e.g.*, *id.* at 1080 (Gorsuch, J., concurring in the judgment) ("Imagine a defendant who sells drugs to the same undercover police officer twice at the same street corner one hour apart. Do the sales take place on the same occasion or different ones?"). This easy observation just about ends the *Wooden* inquiry. "In many cases, a single factor—especially of time . . . —can decisively differentiate occasions." *Id.* at 1071 (majority opinion).

To eliminate any semblance of a doubt, the government has also proven Blackmon's predicate offenses lacked a "common scheme or purpose." *Id.* One crime, the felonious breaking and entering, involved a different victim. The victims in the other two likely differed as well; though both featured J.H., Blackmon's robbery conviction seems to derive solely from his interactions with S.H. because common law robbery requires theft "from the person of another, or in his presence, against his will, by violence or putting him in fear." *State v. Stewart*, 122 S.E.2d 355, 356 (N.C. 1961) (per curiam). And Blackmon's acts against J.H. had entirely distinct purposes regardless. Whereas he wanted her property (and that of S.H.) in one instance, he sought to strangle her in the other.

7

Taking everything together, "[a]bsolutely no one would say" that, on one occasion, Blackmon robbed one or two women and, on the same occasion more than five years later, he strangled one of those women. *Brown*, 136 F.4th at 99. And "[a]bsolutely no one would say" that either of these offenses occurred on the same occasion as when Blackmon, nearly seven years after the strangulation, injured an entirely different woman while breaking into her home. *Id.*

These ready inferences all but dictate the result of our harmlessness review. Recall that by pleading guilty, Blackmon received a three-level reduction for acceptance of responsibility. Had Blackmon instead insisted on a trial, he probably would have forgone this reduction yet assuredly still been deemed, by a jury, an armed career criminal. The rub is that Blackmon only stood to benefit from accepting his fate, as it reduced the bounds of his Guidelines range to the tune of several years. "[G]iven that the possibility of a favorable verdict on the 'different occasions' issue would have been so exceedingly remote as to be practically irrelevant, we cannot fathom that" Blackmon "would have traded the benefit of pleading guilty for such long odds." *Id.*

Blackmon nevertheless posits that, even if he declined a plea and then lost on the occasions issue, the district court might have still granted him a downward variance to fifteen years. That would have rendered his decision to go to trial costless, making it the objectively optimal strategy. However, Blackmon has given no plausible justification as to why the district court would make such a variance. *See Gall v. United States*, 552 U.S. 38, 50 (2007). This remote possibility of a deviation from the Guidelines would not have persuaded him ex ante to roll the dice on the district court's sympathy.

8

C.

The other signs of harmlessness in the *Erlinger* error setting only bolster our conclusion. For starters, Blackmon knew about the possibility of an ACCA enhancement. The fifteen-year minimum was explained at length in his plea agreement, which Blackmon attested to reading and discussing with counsel, and at his plea hearing. Moreover, Blackmon verified that he understood how the district court's occasions determination affected his statutory sentencing range. Just like the defendant in *Brown*, then, Blackmon "chose to plead guilty . . . *after* having been twice informed that ACCA's mandatory minimum of 15 years . . . would apply if the judge found its requirements satisfied." *Brown*, 136 F.4th at 98.

Blackmon also did not seek to withdraw his plea. Indeed, he did not do so even when the government advised the district court that a jury should answer the occasions question. Such an unusual maneuver could have clued Blackmon in to the prospects of the constitutional argument that soon thereafter prevailed in *Erlinger*. This too renders his case akin to *Brown*, where "[e]ven after [the defendant] raised the [*Erlinger*] issue before the district court, he did not seek to withdraw his plea." *Id.*

Finally, Blackmon never challenged the accuracy of his presentence report. Though he debates whether the information in his report can justify an ACCA enhancement, its factual truth—including when and how his violent felonies occurred—has never been in question. Once again, this aligns his position with that of the defendant in *Brown*, who "did not object to the qualifying data supporting th[e] conclusion" in the presentence report "that ACCA's requirements were indeed satisfied by [the defendant's] criminal history." *Id.*

9

D.

At bottom, Blackmon's case is on all fours with *Brown*. This precedent thus forecloses his remaining arguments. For instance, while Blackmon criticizes the government for failing to furnish additional information beyond the contents of the presentence report, the panel in *Brown* relied just as much on the presentence report of the defendant before it. *Id.* at 91, 98. And for good reason; as just explained, the factual contents of the report went wholly unchallenged there. So too here.

The same goes for Blackmon's speculation that the government might not have been able to find enough evidence admissible before a jury about each predicate offense. This far-fetched possibility existed equally in *Brown*; indeed, it exists in every case involving an *Erlinger* error after a guilty plea. And Blackmon cannot plausibly claim his convictions present special evidentiary hurdles due to their age. Even the date of the oldest predicate offense—February 26, 2003—is well within the range of what courts have confronted when holding other *Erlinger* errors harmless. *See, e.g.*, *United States v. Butler*, 122 F.4th 584, 590 (5th Cir. 2024) (finding harmless error for predicates that occurred in 1995, 1996, and 2005); *United States v. Campbell*, 122 F.4th 624, 627, 632 (6th Cir. 2024) (finding harmless error for predicates that occurred, at the latest, in 1993).

Also unavailing is Blackmon's observation that a jury in the Northern District of Georgia once found a defendant did not commit three offenses on separate occasions, even though they occurred over nine years' time. *See* Phase Two Verdict at 1, *United States v. Pennington*, No. 19-CR-455 (N.D. Ga. Sep. 20, 2022), ECF No. 173. *Wooden*'s occasions analysis is inherently case-specific, and no "properly instructed" jury would ever find that

10

the facts here indicate fewer than three occasions. *Brown*, 136 F.4th at 99. Indeed, this court has already deemed harmless plenty of *Erlinger* errors where the predicate offenses spanned much shorter periods—even when the defendant has cited that very jury verdict. *See, e.g.*, *United States v. McNeil*, No. 22-4308, 2025 WL 1767990, at *1 (4th Cir. June 26, 2025) (per curiam) (finding harmless error given predicate offenses separated by at least three days each, despite the defendant discussing the same Georgian jury verdict in his reply brief).

### III.

Try as he might, Blackmon cannot escape the grasp of *Brown*. As was true of the defendant there, the benefits of Blackmon's guilty plea far outweighed the costs; all he forfeited was the right to have a jury hear an open-and-shut argument about why he is an armed career criminal. And as was true of the defendant there, Blackmon neither withdrew his plea nor disputed the accuracy of his presentence report after being advised of ACCA's ramifications. Treating like cases alike, "we have little difficulty concluding that the *Erlinger* error" here—that is, "the failure to inform" Blackmon "of his right to have [the occasions] element found by a jury—was indeed harmless." *Brown*, 136 F.4th at 97–98.

*AFFIRMED*

11