NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0322n.06

Case No. 23-6068

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
| Plaintiff - Appellee, | ) | Jul 02, 2025 |
| | ) | KELLY L. STEPHENS, Clerk |
| v. | ) | |
| | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| TIMOTHY JOHN LEWIS, | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF KENTUCKY |
| Defendant - Appellant. | ) | |
| | ) | O P I N I O N |

Before: MOORE, THAPAR, and DAVIS, Circuit Judges.

DAVIS, J., delivered the opinion of the court in which MOORE, J., concurred, and THAPAR, J., concurred in part and in the result. THAPAR, J. (pp. 19–23), delivered a separate concurring opinion.

DAVIS, Circuit Judge. In March 2023, a jury found Timothy John Lewis guilty of being a felon in possession of a firearm in the Western District of Kentucky. 18 U.S.C. § 922(g)(1). The district court sentenced him to 200 months' imprisonment under the Armed Career Criminal Act ("ACCA"). 18 U.S.C. § 924(a)(2), (e). Lewis raises three arguments to his conviction and sentence on appeal. He asks this court to vacate the jury verdict and the sentence imposed by the district court and remand the matter for resentencing without the ACCA enhancement. For the reasons below, we AFFIRM in part and REVERSE in part.

I.

On June 25, 2018, Officer Taylor Cundiff worked a highway safety detail tasked with enforcing traffic infractions like texting while driving, not wearing a seat belt, and speeding. While parked perpendicular to Crittenden Drive in Louisville, Kentucky, Cundiff observed a seat belt infraction in a 1994 Mazda B-Series truck ("Vehicle"). Cundiff pulled over and approached the Vehicle. He observed three people inside: the driver, Dee Bryant; the middle passenger, Jennifer Owens; and the right-side passenger, Lewis. From this closer vantage point, Cundiff confirmed that Owens was not wearing a seat belt at that time in violation of Kentucky law. Ky. Rev. Stat. Ann. § 189.125(6).

In the process of obtaining Bryant's license and registration, Cundiff noticed Lewis fidgeting with his backpack. Lewis ignored several of Cundiff's warnings to stop, continued searching his backpack until he pulled out what appeared to be narcotics, and attempted to swallow them. At that point, Cundiff forced Lewis out of the Vehicle and handcuffed him. A large knife and more suspected narcotics fell from the Vehicle, prompting Cundiff to search Lewis; he found no other weapons.

Cundiff then ordered Bryant and Owens out of the Vehicle. When backup arrived to assist with the arrest, Bryant told Officer Andrew Graves, one of the assisting officers, that Lewis had a gun. Upon searching under the Vehicle, the officers located a gun around where Lewis had been standing. This gun formed the basis of Lewis's charges.

In October 2019, Lewis moved to suppress any evidence obtained from this traffic stop. He argued that Cundiff's warrantless stop was illegal, so all fruits of the stop and the subsequent searches and arrest should be inadmissible at trial. Based on the video footage of the stop and the "paucity" of Lewis's motion to suppress, the district court found that the stop was lawful and

initially denied the motion on the papers. (Order Denying Mot. to Suppress Evid., R. 46, PageID 152). The district court also initially declined to reconsider. However, it later decided that the motion warranted further consideration and held an evidentiary hearing to determine whether Cundiff had probable cause to stop the Vehicle. After hearing testimony from Cundiff and Lewis's expert witness, Carl Christiansen, the district court concluded that Cundiff had probable cause for the stop based on the information Cundiff had at the time he executed it. The court, therefore, denied Lewis's motion to suppress a second time and the case progressed to trial.

At trial, Bryant testified that she told Officer Graves, after she was handcuffed, about Lewis having a gun. On cross-examination, Lewis's counsel sought to establish that Bryant had a motive to blame Lewis for the gun because, as a felon, she could not possess firearms and because she wanted to take Lewis's house keys after his arrest so she could steal from his apartment. The district court permitted this line of questioning, but instead of confirming Lewis's theory about her motives, Bryant testified that she stayed in Lewis's apartment the night of his arrest to avoid a conflict with a co-resident where she had been staying and that she took nothing from Lewis's apartment.

After cross-examining Bryant, Lewis sought to call an investigator, Sharon Bowling, to attack Bryant's credibility. The prosecution objected. According to Lewis, Bowling would testify about a 911 "run sheet" dating from the night of Lewis's arrest. (Trial Tr. Vol. 2-A, R. 267, PageID 1240). The run sheet would detail a 911 call reporting that two women were seen taking things from Lewis's apartment to a Mazda truck matching the description of the Vehicle. Lewis purported to offer this testimony to show Bryant's perverse motive and bias in blaming Lewis for the gun. The district court did not allow Bowling's testimony, holding that the rules of evidence

do not permit this type of character evidence and, even if a rule were to permit the evidence, relevancy concerns prevent its admission. Lewis challenges this exclusion on appeal.

The jury found Lewis guilty. Lewis received a sentence of 200 months' imprisonment. At sentencing, the district court found that Lewis's four prior convictions for second-degree burglary under Kentucky law each met the definition of "violent felony" or "serious drug offense" under the ACCA. *See* Ky. Rev. Stat. Ann. § 511.030. Three of these convictions were for burglaries committed three days in a row: June 12–14, 2006. The fourth was committed on April 8, 2014. The district court concluded that each conviction occurred on a different occasion and therefore, taken together, triggered the ACCA's fifteen-year mandatory-minimum sentence. Lewis now appeals his sentence, arguing that the district court erred in concluding that the three 2006 burglaries occurred on different occasions. As a result, says Lewis, he should not have been sentenced as an armed career criminal under § 924(e)(1).

Additionally, after the completion of appellate briefing, the Supreme Court determined that a jury must decide whether a defendant's prior convictions occurred on different occasions. *Erlinger v. United States*, 602 U.S. 821, 835 (2024). Within days of the Supreme Court's decision, the government followed up with a Rule 28(j) letter, apprising this court of the *Erlinger* decision and asserting that Lewis's purported failure to raise the issue in the district court warranted application of plain-error review. And in supplemental briefing requested by this court, both parties analyzed the merits as a matter of plain error. Lewis asserts that the district court plainly erred in conducting the different-occasions analysis in place of a jury. And the government asserts that Lewis cannot demonstrate plain error because the error did not seriously affect the fairness, integrity, or public reputation of Lewis's sentencing proceedings.

## II.

## A.

In considering the district court's denial of Lewis's motion to suppress, we review "the court's factual findings for clear error and its legal determinations—including whether probable cause existed—de novo." *United States v. Hines*, 885 F.3d 919, 924 (6th Cir. 2018). When a district court hears witness testimony to aid its determination of whether probable cause existed, we accord its credibility determinations "great deference and must uphold its findings of fact unless they are clearly erroneous." *United States v. Esteppe*, 483 F.3d 447, 452 (6th Cir. 2007). We view the evidence "in the light most likely to support the district court's decision." *United States v. Powell*, 847 F.3d 760, 767 (6th Cir. 2017) (quoting *United States v. Hurst*, 228 F.3d 751, 756 (6th Cir. 2000)). And we are not limited to the record as it existed at the time the motion to suppress was decided; we may affirm a district court's denial of a motion to suppress based on trial testimony. *United States v. Hardin*, 539 F.3d 404, 417 (6th Cir. 2008); *see also United States v. Hinojosa*, 606 F.3d 875, 880 (6th Cir. 2010).

## B.

Lewis asserted below that Cundiff violated his Fourth Amendment rights by stopping the Vehicle without probable cause or a warrant. On appeal, he contends that the district court erred by failing to make appropriate factual findings concerning the basis for the stop. According to Lewis, if the district court had held an evidentiary hearing and made factual findings regarding Cundiff's probable cause, it would have concluded that there was no probable cause for the traffic stop. He asks that we remand this case so the district court can hold an evidentiary hearing to make this determination. The government maintains that the district court did make such factual findings and concluded that there was probable cause for the stop.

Lewis argues from a mistaken premise; the district court held an evidentiary hearing on reconsideration of its initial denial of Lewis's motion to suppress. And that evidentiary hearing focused exclusively on the factual underpinnings of the probable-cause determination. In short, Lewis already received the evidentiary hearing he seeks on remand in this appeal.

Moreover, the district court's factual findings supported its conclusion that Cundiff had probable cause to stop the Vehicle. While searches and seizures conducted without a warrant are "per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions," *Katz v. United States*, 389 U.S. 347, 357 (1967), an officer may stop and detain a motorist for a traffic violation without a warrant "so long as the officer has probable cause to believe that the motorist has violated a traffic law," *United States v. Bell*, 555 F.3d 535, 539 (6th Cir. 2009); *see also Whren v. United States*, 517 U.S. 806, 810 (1996). Cundiff testified that he was trained to look for "the seat belt strap that comes across the chest as you clip your seat belt in" when assessing seat belt violations in cars passing by. (Suppression Hr'g Tr., R. 153, PageID 514). He also testified that he had an unobstructed view of the Vehicle and its three occupants when he observed a potential seat belt infraction. Specifically, Cundiff did not see Owens—the Vehicle's middle passenger—wearing a shoulder strap, which led him to believe she was not wearing a seat belt.

Under Kentucky law, "[a] person shall not operate a motor vehicle . . . unless the driver and all passengers are wearing a properly adjusted and fastened seat belt." Ky. Rev. Stat. Ann. § 189.125(6). And we have held that "an officer has probable cause if the officer sees an individual in the vehicle not wearing a seatbelt in violation of state law." *United States v. Brooks*, 987 F.3d 593, 598 (6th Cir. 2021). After considering Cundiff's testimony and evidence offered by Lewis, the district court credited Cundiff's account of the events leading to the stop. Lewis has presented

no evidence to demonstrate that the district court's credibility determination was clearly erroneous. We therefore accord it great deference. *See Esteppe*, 483 F.3d at 452. And given that we view the evidence in the light most favorable to the prevailing party—here, the government—Cundiff's testimony supports the constitutionality of the traffic stop. *See United States v. Garrido*, 467 F.3d 971, 977 (6th Cir. 2006). Thus, the district court did not err in denying Lewis's motion to suppress evidence.

III.

We next turn to Lewis's argument that the district court improperly excluded his investigator, Sharon Bowling, as a witness. We review a district court's evidentiary rulings for abuse of discretion. *United States v. Hazelwood*, 979 F.3d 398, 408 (6th Cir. 2020). "An abuse of discretion occurs when the district court relies on clearly erroneous facts, uses an erroneous legal standard, or improperly applies the law." *Id.*

The district court did not abuse its discretion in denying Lewis's request to present Bowling's testimony. Lewis intended to call Bowling to undermine Bryant's testimony about her actions in Lewis's apartment on the night of his arrest. Lewis proffered that Bowling would reference a "911 run sheet" from the night of the arrest, detailing a call about two women (one of whom was allegedly Bryant) carrying items out of Lewis's apartment. This testimony would ostensibly help establish Bryant's bias or motive for telling Graves that Lewis had a gun at the time of the arrest.

Generally, the Federal Rules of Evidence prohibit the admission of extrinsic evidence of a witness's character to prove action in conformity with that trait on a particular occasion. Fed. R. Evid. 404(a)(1). The district court ruled that both the lack of legal support in the Federal Rules of

Evidence for the admission of Bowling's proposed testimony and the testimony's lack of relevance under Rule 402 were sufficient grounds to exclude it.

Lewis argues that both Rule 405 and this court's precedent permit Bowling's testimony. But Lewis is incorrect. Rule 405 does not govern the admissibility of this type of extrinsic evidence; it only describes the methods by which character may be proven when such evidence is admissible. Fed. R. Evid. 405(a). Inquiry into "relevant specific instances of the person's conduct" is limited to the cross-examination of a character witness. *Id.* Thus, the district court could not have properly admitted Bowling's testimony under Rule 405.

We have held that "prior misconduct of a witness which is probative of the bias of that witness may be proved by extrinsic evidence." *United States v. Phillips*, 888 F.2d 38, 41 (6th Cir. 1989). But "admissibility of extrinsic evidence remains a matter for the discretion of the trial court." *United States v. Meyer*, 803 F.2d 246, 249 (6th Cir. 1986) (citing *United States v. Abel*, 469 U.S. 45, 54 (1984)). And not all extrinsic evidence of prior misconduct qualifies for admission; such evidence should be excluded when it "is only remotely relevant." *Phillips*, 888 F.2d at 41 (internal quotation marks and citation omitted) (excluding testimony as "remotely relevant" when it "would not increase or decrease the probability" that the defendant committed the alleged offense and would only "create a swearing contest about a matter which . . . was far removed from th[e] case").

Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." Fed. R. Evid. 401. If Bowling's testimony has any relevance, it is only remote. At most, her testimony may have established the substance of the 911 call made: two females driving a Mazda with plates matching the Vehicle entered Lewis's apartment, took things out of the apartment, and placed them

into the Vehicle. None of this information contradicts Bryant's testimony at trial, nor does it identify Bryant as one of the people who took things from Lewis's home. Consequently, any tendency that the proffered testimony may have had to make Bryant's bias or motive more or less likely is attenuated, at best. This is because Bowling's testimony "would not increase or decrease the probability" that Bryant had a motive to lie about who owned the gun. *Phillips*, 888 F.2d at 41. Moreover, Lewis's counsel had the opportunity to cross-examine Bryant regarding her bias and motive. As Bowling's testimony was only remotely relevant, the district court was within its discretion to exclude it.[1]

### IV.

### A.

Finally, we turn to Lewis's argument that he should not have been sentenced as an armed career criminal under 18 U.S.C. § 924(e)(1). The ACCA requires the sentencing court to impose a mandatory minimum fifteen-year sentence for violations of 18 U.S.C. § 922(g) if the offender "has three previous convictions . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another." At sentencing, the district court found that four of Lewis's prior offenses qualified as violent felonies under the ACCA: three second-degree burglary convictions from 2006 and a 2014 second-degree complicit burglary conviction.

---

[1] Lewis asks us to follow the Second Circuit's reasoning in *Justice v. Hoke*, 90 F.3d 43 (2d Cir. 1996), where the court vacated and remanded a conviction after finding that the trial court's exclusion of witness testimony was erroneous because "extrinsic proof tending to establish a reason to fabricate is never collateral and may not be excluded on that ground." *Id.* at 48 (citation omitted). In *Harrington v. Jackson*, 1 F. App'x 367, 372 (6th Cir. 2001), we declined to adopt the Second Circuit's reasoning in *Hoke*, and we decline to do so today.

The district court sentenced Lewis as an armed career criminal based on Lewis's 2006 convictions for second-degree burglary.[2]

While Lewis's appeal was pending, the Supreme Court decided *Erlinger v. United States*, 602 U.S. 821 (2024), holding that the Fifth and Sixth Amendments require that a jury determine beyond a reasonable doubt whether a defendant's predicate offenses were committed on the same or different "occasions." 602 U.S. at 835. The Supreme Court defined ACCA "occasions" in *Wooden v. United States*, 595 U.S. 360 (2022). In *Wooden*, the Court held that Wooden's ten burglary convictions occurred on a single occasion when he burglarized ten successive storage units at the same storage facility on the same evening. *Id.* at 362. The Court conducted a multi-factor inquiry, focusing on the ordinary meaning of "occasion." *Id.* at 369. Following *Wooden*, three factors emerged as the primary, non-exhaustive, considerations: the timing of the offenses, the proximity of the location of the offenses, and "the character and relationship of the offenses." *Id.*

Erlinger argued that the factor-based *Wooden* inquiry required a jury to assess the facts surrounding those prior offenses. *Erlinger*, 602 U.S. at 827. Because "[v]irtually 'any fact' that 'increase[s] the prescribed range of penalties to which a criminal defendant is exposed' must be resolved by a unanimous jury beyond a reasonable doubt (or freely admitted in a guilty plea)," the Court agreed. *Id.* at 834 (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)). Thus, under *Erlinger*, the ACCA's different-occasions question in Lewis's case should have gone to a jury. And reviewing the district court's determination on the applicability of the enhancement

---

[2] The district court also found that the 2014 offense qualified as a violent felony so, in the alternative, the June 12, 2006; June 14, 2006; and 2014 offenses qualified as different occasions to justify imposing the ACCA's mandatory minimum.

necessarily requires us to also consider whether the lack of a jury determination on the different-occasions question prejudiced Lewis.

B.

Determining the standard of review for this error is somewhat complicated based on the procedural posture of this case. In his opening brief, Lewis argued only that the district court misapplied *Wooden*, and he asserted we should review for abuse of discretion. The government responded that de novo review applies. Then the Supreme Court decided *Erlinger*, and the government in its 28(j) letter argued that plain-error review applies because Lewis did not object below to the district court deciding the different-occasions question. Lewis subsequently conceded that plain-error review would apply to the district court's *Erlinger* error.

We agree that plain-error review would apply if the government were correct that Lewis failed to preserve the issue below. *See United States v. Vonner*, 516 F.3d 382, 385 (6th Cir. 2008) (en banc). But the record shows that Lewis did preserve the issue in the district court: The parties jointly requested bifurcated proceedings in which the jury would consider the different-occasions question only after reaching a decision on guilt. But relying on then-applicable Sixth Circuit precedent, the district court denied the request. And after the denial, Lewis made a record of his objection.

So, although both parties agree that plain-error review should apply, this supposition is built on the mistaken premise that Lewis failed to object below. And there is reason to question this conclusion. We recently decided, in cases involving properly preserved *Erlinger* errors, that harmless-error review applies. *See United States v. Campbell*, 122 F.4th 624, 630–33 (6th Cir. 2024); *United States v. Cogdill*, 130 F.4th 523, 527–28 (6th Cir. 2025). Thus, had Lewis raised the jury-determination error in his opening brief, harmless-error review clearly would apply rather

than plain-error review.  But the added wrinkle here is that Lewis did not raise the district court's

determination of the "who decides" question as a ground for his appeal.  This oversight would

ordinarily result in forfeiture of the issue.  *See Ogbonna-McGruder v. Austin Peay State Univ.*, 91

F.4th 833, 843 (6th Cir. 2024) ("An appellant abandons all issues not raised and argued in its initial

brief on appeal."  (citation and internal quotation marks omitted)).  Yet the intervening decision in

*Erlinger* makes addressing the issue integral to our different occasions analysis.  And the

government has declined to advance, and therefore has forfeited, any argument that Lewis

abandoned the issue by failing to raise it on appeal.  *Fort Bend County v. Davis*, 587 U.S. 541,

546, 548–49 (2019).  Thus harmless-error review likely applies.

Ultimately, the question of which standard applies here may be somewhat academic

because the result is the same under either one.  True, under harmless-error review the government

must prove beyond a reasonable doubt that, absent the error, a jury properly instructed on

*Wooden*'s different-occasions question would have found that Lewis's burglaries occurred on at

least three different occasions, *Cogdill*, 130 F.4th at 527–28, while under plain-error review, Lewis

bears the burden of proving that a plain error affected his substantial rights and that failing to

remedy that error would affect the fairness and integrity of his judicial proceedings, *Vonner*, 516

F.3d at 385.  But the key to each standard comes down to whether, absent the error, the outcome

would have been the same or different.  That is because the harmless-error prejudice standard

meaningfully overlaps with the substantial-rights prong of plain-error review.  *United States v.*

*Olano*, 507 U.S. 725, 734 (1993).  Showing that the error affected his substantial rights normally

would require Lewis to show "that the error was prejudicial."  *Id.*  And an error is prejudicial when

it affects the outcome of the proceedings below.  *Molina-Martinez v. United States*, 578 U.S. 189,

194 (2016). Because we are not convinced that, absent the error, the outcome of Lewis's proceedings would have been the same, Lewis prevails under either standard.

### C.

Because of the similarities in evaluating prejudice under plain error and harmless error discussed above, our analysis of the former necessarily disposes of the latter. Lewis contends that, if a jury heard evidence as to whether his three 2006 convictions occurred on different occasions, it would not have found that his convictions met the requirement. The government, however, contends that we need not assess the effect, if any, on Lewis's substantial rights because the *Erlinger* error did not affect the fairness and integrity of the proceedings. This effective punt on the prejudice question dooms the government's cause. Lewis has effectively demonstrated a reasonable probability of a different outcome but for the error. And by declining to address prejudice at all—as would be the government's burden under a harmlessness analysis—the government has failed to show that a jury, properly instructed on *Wooden*'s multi-factor different-occasions question, would have found beyond a reasonable doubt that the three 2006 burglaries occurred on different occasions. We explain why below.

Because Lewis's 2014 offense qualifies as a violent felony for ACCA purposes, his qualifying offense count begins at one, so only two of his 2006 burglary convictions had to occur on different occasions to trigger the enhancement. In assessing whether Lewis was prejudiced by the district court's determination, we may consider "relevant and reliable information from the entire record—including information contained in the pre-sentence report." *Greer v. United States*, 593 U.S. 503, 511 (2021); *see also Campbell*, 122 F.4th at 632–33.

*Timing.* True, each of Lewis's second-degree burglaries occurred on separate days: June 12, June 13, and June 14 of 2006. However, "no particular lapse of time or distance between

offenses automatically separates a single occasion from distinct ones." *Erlinger*, 602 U.S. at 841 (citing *Wooden*, 595 U.S. at 369–70). We have found *Erlinger* errors harmful when the lapse in time between offenses was far longer than one day. *See, e.g.*, *Cogdill*, 130 F.4th at 529–31 (finding *Erlinger* error harmful where two of three offenses occurred three months apart). And Lewis points to several instances where juries deciding the different-occasions question have found that offenses spanning weeks or even months did not occur on different occasions. *United States v. Pennington*, No. 1:19-cr-455 (N.D. Ga. Sept. 20, 2022) (jury did not find three prior marijuana convictions separated by months or years, suggesting offenses occurred at different times, were committed on different occasions); *United States v. Willis*, No. 4:21-cr-548 (E.D. Mo. July 16, 2024) (jury did not find robbery offenses committed on or about July 15, 2010; August 1, 2010; and August 19, 2010 occurred on different occasions).

The timing between Lewis's offenses distinguishes his case from our recent decision in *United States v. Campbell*, where we found an *Erlinger* error harmless. In that case, the defendants' offenses were separated by months or years. *Campbell*, 122 F.4th at 630–33. And our sister circuits addressing this issue similarly have generally found an *Erlinger* error harmless only when offenses have been separated by months or years. *See, e.g.*, *United States v. Curry*, 125 F.4th 733, 740 (5th Cir. 2025) (predicate offenses occurred in September 1985, July 1987, August 1987, and March 1989); *United States v. Robinson*, No. 23-4420, 2025 WL 900423, at *3 (4th Cir. Mar. 25, 2025) (per curiam) (affirming a jury finding that the ACCA occasions analysis was satisfied based on six predicate offenses that occurred over a five-month period); *United States v. Voltz*, No. 22-10733, 2024 WL 4891754, at *4 (11th Cir. Nov. 26, 2024) (per curiam) (predicate offenses undisputably separated by years); *United States v. Saunders*, No. 23-6735-cr, 2024 WL 4533359 (2d Cir. Oct. 21, 2024) (defendant did not dispute that predicate offenses occurred on or

before July 9, 2005; on November 13, 2005; and August 12, 2009); *United States v. Robinson*, No. 23-3438, 2024 WL 4448849 (8th Cir. Oct. 9, 2024) (predicate offenses occurred in 1996, 1997, 2013, and 2015). In contrast to these cases, at most one day separated each of Lewis's burglaries. That Lewis committed each 2006 offense on different days is not enough, standing alone, to find that the burglaries occurred on different occasions.

*Proximity of location.* Moving on to geographic proximity, this factor is a question of degree. "[T]he further away crimes take place, the less likely they are components of the same criminal event." *Wooden*, 595 U.S. at 369. Lewis's three 2006 burglaries took place within a fourteen-mile span in Jefferson County, Louisville, Kentucky: the houses burglarized on June 12 and June 13 were twelve miles apart; and the June 13 and June 14 burglaries were less than two miles apart. Though evidence of separate victims can indicate different occasions, a burglar need not burglarize the same home or the same family for a jury to find that a string of burglaries encompassed a spree. *See Erlinger*, 602 U.S. at 835, 841. The tight footprint of Lewis's burglaries, combined with the short time span, suggests a spree.

Binding precedent supports this conclusion. In *United States v. Cogdill*, we found an *Erlinger* error harmful because the few facts available revealed only that Cogdill's two Tennessee drug offenses occurred in the same county. 130 F.4th at 529. While the Supreme Court did not determine how we are to review an *Erlinger* error retroactively, it did opine that, had a jury been "[p]resented with evidence about the times, locations, purpose, and character" of Erlinger's four robberies, 602 U.S. at 835, which occurred "within a span of days," *id.* at 826, it "might have concluded that some or all occurred on different occasions[, o]r it might not have done so," *id.* at 835.

The facts of Lewis's case are more like *Erlinger*'s facts than any other precedential case retroactively considering an *Erlinger* error. Like Erlinger, Lewis committed his burglaries in the same county. But Lewis's offenses occurred within even closer proximity than Erlinger's. *See id.* at 826. If a jury "might have" concluded Erlinger's offenses did not occur on different occasions, we cannot conclude differently here. And this conclusion is not incongruent with our recent decision in *Campbell*, where we found the *Erlinger* error harmless in part because two of Campbell's prior offenses occurred 800 miles apart. *Campbell*, 122 F.4th at 632. Thus, Lewis has presented sufficient evidence of a reasonable probability that a jury might find this factor, too, weighs in favor of finding that his offenses did not occur on different occasions.

*Character and relationship of the offenses.* The *Wooden* Court said that "[t]he more similar or intertwined the conduct giving rise to the offenses . . . the more apt they are to compose one occasion." 595 U.S. at 369. Wooden's crimes were of a "common scheme or purpose" not only because of their similar nature but also because of their continuity from one to the next: Wooden burglarized ten storage units, one after the other. *Id.* at 362, 369.

Lewis's offenses admittedly did not flow so seamlessly into each other as Wooden's. However, a jury could still find that the "character and relationship" of Lewis's offenses would not render them different occasions. In *Cogdill*, we found it persuasive that two of Cogdill's predicate offenses occurred without an intervening arrest and Cogdill was convicted of both together. 130 F.4th at 529. Likewise, here the 2006 burglaries occurred over the span of three consecutive days, with no intervening arrests in between. The first and last robberies were committed with the same co-conspirator. And all three offenses were charged in the same indictment. Under Kentucky law, two or more offenses may be charged in the same indictment "if the offenses are of the same or similar character or are based on the same acts or transactions

- 16 -

connected together or constituting parts of a common scheme or plan." Ky. R. Crim P. 6.18; *see also Wooden*, 595 U.S. at 370–71.

These facts were not present in *Campbell*, where Campbell's predicate offenses were for "wholly distinct crimes." 122 F.4th at 632. Yet, if the type of crime is relevant to the different-occasions inquiry, this weighs in Lewis's favor because each relevant conviction is for second-degree burglary. Further, Lewis burglarized three residential homes, and, according to Lewis, he did so with the same motive and means.

While each burglary was committed several miles away from one another and targeted different victims, we cannot say that these facts would sway a jury from finding that the robberies were a part of a common plan devised to take place over the span of a few days. On these facts, Lewis has shown a reasonable probability that, but for the error, a jury properly instructed under *Wooden* and *Erlinger* would have found that Lewis committed the prior offenses on the same occasion. Therefore, Lewis has satisfied prong three of plain-error review.

D.

Because the *Erlinger* error affected Lewis's substantial rights, it was not harmless. And even if we accept the government's assertion that plain-error review applies, Lewis satisfies all four prongs of that inquiry because the *Erlinger* error "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Molina-Martinez*, 578 U.S. at 194. The government, arguing otherwise, contends that *Johnson v. United States*, 520 U.S. 461 (1997), is dispositive here. In *Johnson*, the Supreme Court held that a district court's error in deciding the materiality element of a perjury prosecution, rather than instructing the jury, was not plain. 520 U.S. at 470. In tailoring its analysis specifically to the facts of that case, the Court found that the fourth prong was not satisfied because "[m]ateriality was essentially uncontroverted" and so Johnson's

conviction, even absent a jury finding on materiality, was not a manifest miscarriage of justice. *Id.*

Contrastingly, here, the question of whether Lewis's 2006 burglaries occurred on different occasions is not "essentially uncontroverted." Moreover, had Lewis been sentenced without the ACCA enhancement, he would have scored an offense level of 14 and had a criminal history category of VI, resulting in an advisory Guidelines range of 37 to 46 months' imprisonment. By applying the ACCA's mandatory minimum, the district court increased Lewis's guidelines range by about 200 months' or 16 ½ years' imprisonment. Leaving intact a sentence premised on such a potentially overcalculated Guidelines range assuredly "affects the fairness, integrity or public reputation of judicial proceedings." *Molina-Martinez*, 578 U.S. at 194; *see also United States v. Tanner*, 837 F.3d 596, 601 (6th Cir. 2016) ("Failure to calculate the Guidelines range correctly generally results in plain error."); *United States v. Billings*, No. 22-4311, 2024 WL 3633571, at *6 (4th Cir. Aug. 2, 2024) (finding *Erlinger* error resulting in "a prison term twice as long as the maximum sentence [the defendant] could have received without the armed career criminal designation" satisfied the fourth prong).

While satisfying plain-error review is difficult, Lewis would do so here. And our assessment of prejudice shows that the error was not harmless. Therefore, regardless of how we review the propriety of the district court's *Erlinger* error, Lewis is entitled to relief.

V.

The district court's judgment is AFFIRMED in part and REVERSED in part. We AFFIRM Lewis's conviction, VACATE his sentence, and REMAND for further proceedings consistent with this opinion.

**THAPAR, Circuit Judge, concurring in part and concurring in the judgment.** A jury convicted Timothy Lewis of being a felon in possession of a firearm. I join the majority in affirming Lewis's conviction. I also agree with the majority's decision to remand Lewis's case for re-sentencing, but I reach that conclusion by a slightly different path.

I.

The district court sentenced Lewis as an armed career criminal after finding that Lewis had committed three violent felonies on "occasions different from one another." *See* 18 U.S.C. § 924(e)(1). Lewis had been convicted of three burglaries that he committed on three consecutive days in 2006: June 12, June 13, and June 14. The district court concluded that at least two of the June 2006 burglaries took place on different occasions from one another. With a 2014 conviction for complicity to burglary tacked on, that meant Lewis had committed three violent felonies on different occasions.

This different-occasions finding triggered the Armed Career Criminal Act's mandatory minimum of 15 years in prison for Lewis's felon-in-possession conviction. *See id.* Without the enhancement, Lewis would have faced an advisory Guidelines range of 37 to 46 months in prison. But since the enhancement applied, the district court sentenced Lewis to 200 months in prison.

Lewis appealed his conviction and sentence. While his appeal was pending before this court, the Supreme Court decided *Erlinger v. United States*. *See* 602 U.S. 821 (2024). There, the Court held that the Constitution prohibits courts from applying ACCA's mandatory sentencing enhancement unless a jury finds, beyond a reasonable doubt, that the defendant committed his predicate crimes on different occasions. *Id.* at 835. Under this rule, Lewis could be sentenced as an armed career criminal only if a jury found that his burglaries from June 2006 occurred on

different occasions. But in Lewis's case, the judge—not a jury—made that factual determination. As everyone now agrees, that was a legal error in light of *Erlinger*.

The question then becomes: What standard of review should this court apply to determine whether the *Erlinger* error warrants a re-sentencing? In my view, the harmless-error standard governs this case. This court has already held that properly preserved *Erlinger* errors are subject to harmless-error analysis. *United States v. Campbell*, 122 F.4th 624, 630 (6th Cir. 2024). And Lewis raised a timely objection to the district court's decision to decide the different-occasions inquiry itself (rather than submitting it to a jury). The district court acknowledged that Lewis's objection was "noted for the record," allowed Lewis to elaborate on his objection, and then confirmed once again that it understood the objection. R. 270, Pg. ID 1364–66. Because Lewis raised a timely objection and because all agree that his objection proved meritorious in light of *Erlinger*, the harmless-error standard governs Lewis's direct appeal of the *Erlinger* error. *Campbell*, 122 F.4th at 630.

Under this standard of review, the government bears the burden to show that the *Erlinger* error was harmless. We may affirm Lewis's sentence in spite of the error only if the government shows "beyond a reasonable doubt" that a jury would have found that Lewis committed at least two of his three burglaries on different occasions. *See id.* at 631. On this factual record, the government hasn't made that showing.

Lewis committed three burglaries in Louisville, Kentucky, on three consecutive days: June 12, June 13, and June 14, 2006. Whether these burglaries occurred on different "occasions" within the meaning of ACCA depends on a "multi-factored" inquiry. *Wooden v. United States*, 595 U.S. 360, 369 (2022). Crimes that form part of a single "spree" do not count as separate predicate offenses. *Id.* at 383 (Barrett, J., concurring in part and concurring in the judgment). Here, the

government hasn't proven that it would be irrational for a jury to find that Lewis committed his three burglaries as part of a single criminal spree.

First, consider the timing of the burglaries. Lewis committed his three offenses on three different dates: June 12, 13, and 14. To be sure, courts "have nearly always treated offenses as occurring on separate occasions if a person committed them a day or more apart." *Id.* at 370 (majority opinion). But here, the government hasn't introduced any facts about the *timing* of Lewis's offenses on those dates. For all we know, the three burglaries might have occurred within a 25-hour window. As Lewis explained to the district court, if the crimes started at 11:59 p.m. on the 12th and continued until 12:01 a.m. on the 14th, that would mean that each burglary took place within hours, not days, of the preceding one. R. 276, Pg. ID 1660; *Wooden*, 595 U.S. at 370.

What's more, the government hasn't identified any "significant intervening events" between Lewis's burglaries. *Wooden*, 595 U.S. at 369. Offenses committed "in an uninterrupted course of conduct" will "often count as part of one occasion." *Id.* On this record, the only thing separating the June 12 and the June 14 burglaries was yet another burglary, which took place on June 13. The June 13 burglary only increases the possibility that the June 12 and June 14 burglaries were the bookends of a single, ongoing episode of criminal conduct.

Second, consider the location of the burglaries. *Id.* All three took place in the city of Louisville. The second burglary happened 12 miles away from the first; the third burglary happened just 1.7 miles away from the second. To be sure, those distances were greater than those in *Wooden*, where the defendant burglarized ten storage units at the same location. *Id.* at 363. Nevertheless, the three homes that Lewis burglarized are within a 25-minute driving radius, or a few hours' walking distance. Suppose Lewis left his home on the night of June 12, committed three burglaries over the course of 25 hours, and then returned home on the 14th. If presented with

that evidence, a jury might conclude that Lewis committed the burglaries as part of a "single criminal episode." *Id.* But there isn't enough in the record to say for sure, since the government didn't carry its burden to introduce evidence about the timing or locations of Lewis's crimes.

Third, consider the character and relationship of the three burglaries. The more the offenses share a "common scheme or purpose," the more likely they are to count as a single occasion. *Id.* at 369. Here, the record contains little evidence that's relevant to this factor. Of course, since the government bears the burden to demonstrate harmless error, we must afford Lewis the benefit of an underdeveloped factual record.

For now, the government hasn't shown that a rational jury would necessarily have concluded that the crimes took place on different occasions.

II.

For its part, the government urges us to apply plain-error review. See Fed. R. Crim. P. 52(b). Three days after *Erlinger* was decided, the government informed this court of *Erlinger*'s relevance to Lewis's case. To its credit, the government forthrightly acknowledged that, under *Erlinger*, an obvious legal error occurred at Lewis's trial. The government nevertheless argued that plain-error review applied because "Lewis did not raise the [jury-versus-judge] issue in the district court." ECF No. 40 at Pg. 2. But as explained above, Lewis did object. In fact, the court expressly confirmed that Lewis's objection was preserved for the record. Because Lewis objected below, plain-error review doesn't apply.

And the standard of review matters to this appeal. Lewis can prevail under harmless-error review, but not under plain-error review. Crucially, if plain-error review applied, then Lewis— not the government—would bear the burden of showing a "reasonable probability" that his crimes did in fact occur on the same occasion. *Greer v. United States*, 593 U.S. 503, 508 (2021). Making

that showing "is difficult." *Id.* (citation omitted). Given the limited factual record before us, Lewis hasn't carried that burden. But for the reasons explained above, the government similarly hasn't proven beyond a reasonable doubt that Lewis's crimes did in fact occur on different occasions. Lewis deserves a re-sentencing only because, on the unique facts of this case, the government hasn't carried its heavy burden under harmless-error review. For that reason, I respectfully disagree with the majority's decision not to decide which standard of review applies.

\* \* \*

The district court, not the jury, decided that Lewis committed his three burglaries on different occasions. That was a faithful application of existing caselaw. But with *Erlinger* now on the books, all agree that the court's reservation of the different-occasions finding was a legal error. Thus, we must vacate the court's finding that Lewis's crimes occurred on different occasions, since we can't say for certain that a jury would agree. Ultimately, Lewis may still end up receiving the 15-year mandatory minimum under the Armed Career Criminal Act. But under *Erlinger*, he has the right to have a jury make the determination of whether the burglaries occurred on different occasions.