SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.

**State v. Jamel Carlton (A-62/63-24) (090241)**

**Argued September 25, 2025 -- Decided February 23, 2026**

**JUSTICE NORIEGA, writing for a unanimous Court.**

In this appeal, the Court considers whether an enhanced sentence under N.J.S.A. 2C:44-3(a), New Jersey's persistent offender statute, predicated on fact-finding rendered without the benefit of a jury, could be subject to harmless error review in the wake of Erlinger v. United States, 602 U.S. 821 (2024).

Defendant Jamel Carlton was convicted of sexual assault, burglary, and other offenses. At sentencing, the State moved to have him sentenced as a persistent offender and presented two certified judgments of conviction in support of its application. The trial court accepted those records -- without objection from the defense -- and determined Carlton was persistent-offender-extended-term eligible.

Carlton appealed, raising various errors regarding his trial. While his appeal was pending, the Supreme Court of the United States issued Erlinger, in which it held that a defendant is entitled under the Fifth and Sixth Amendments to have a jury unanimously determine, beyond a reasonable doubt, whether the defendant's past offenses were "committed on occasions different from one another" under the Armed Career Criminal Act. Following Erlinger, Carlton and the State agreed that Carlton's enhanced sentence was unconstitutional because the judge made the findings about his persistent offender status. The parties disagreed as to whether harmless error applied.

The Appellate Division determined that the Erlinger error here could not be harmless and vacated the sentence. 480 N.J. Super. 311, 342 (App. Div. 2024). The court employed a "saving construction" to conform N.J.S.A. 2C:44-3(a) to Erlinger's mandate. Id. at 351. The Court granted both parties' petitions for certification. 260 N.J. 478 (2025).

**HELD:** The Erlinger error is subject to harmless error review and was harmless under the circumstances of this case. However, as written, N.J.S.A. 2C:44-3(a) is inconsistent with the principles announced in Erlinger. The Court calls upon the Legislature to revise this provision to comport with Erlinger's mandate.

1

1. The Due Process Clause requires proof beyond a reasonable doubt of every fact necessary to constitute the crime. Under the Sixth Amendment, defendants are entitled to have such proof presented to a jury. In Almendarez-Torres v. United States, the United States Supreme Court concluded that a judge could determine the existence of a prior conviction as part of the sentencing process. 523 U.S. 224, 226-27, 241 (1998). But, two years later, the Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury." Apprendi v. New Jersey, 530 U.S. 466, 490 (2000). Later cases likewise required that penalty-increasing facts be submitted to a jury and proven beyond a reasonable doubt. See Alleyne v. United States, 570 U.S. 99, 112 (2013); Blakely v. Washington, 542 U.S. 296, 303, 313 (2004). Erlinger cements the limited reach of the Almendarez-Torres exception and reaffirms Apprendi and Blakely, holding that even "seemingly straightforward" factual determinations relating to prior convictions are reserved for the jury when those facts increase sentencing exposure. Erlinger, 602 U.S. at 849. (pp. 9-12)

2. N.J.S.A. 2C:44-3 provides that "the court may" impose an extended-term sentence "if it finds one or more of the grounds specified in subsection a., b., c., or f. of this section." (emphases added). Subsection (a), specifically at issue in this case, addresses when a defendant may be sentenced as a persistent offender. (pp. 13-14)

3. Errors in failing to submit sentencing factors or elements to a jury, as in Apprendi and its progeny, are presumptively subject to harmless error analysis. And although the Supreme Court has not addressed harmless error review in Erlinger's wake, courts have reviewed Erlinger issues for harmless error and considered whether the prosecution had established beyond a reasonable doubt that the outcome would have been the same absent the constitutional violation. Noting that, here, the record provided meaningful appellate review and only one outcome would have been possible at trial, the Court finds the Erlinger error was harmless. (pp. 15-20)

4. Because it finds the Erlinger error in this case was harmless beyond a reasonable doubt, the Court does not reach the Appellate Division's conclusion that judicial surgery could be used to conform the persistent offender statute to Erlinger. The Court urges the Legislature to promptly amend the persistent offender statute so that it comports with the United States Supreme Court's precedent and provides clear direction to the courts and practitioners charged with applying it. (pp. 20-21)

**REVERSED.**

**CHIEF JUSTICE RABNER and JUSTICES PATTERSON, PIERRE-LOUIS, WAINER APTER, FASCIALE, and HOFFMAN join in JUSTICE NORIEGA's opinion.**

2

# SUPREME COURT OF NEW JERSEY

## A-62/63 September Term 2024
## 090241

State of New Jersey,

Plaintiff-Appellant/Cross-Respondent,

v.

Jamel Carlton, a/k/a
Jamel A. Carlton,
Jamal Carlton, and
Ghost J,

Defendant-Respondent/Cross-Appellant.

On certification to the Superior Court,
Appellate Division, whose opinion is partially
published at 480 N.J. Super. 311 (2024).

| Argued | Decided |
| --- | --- |
| September 25, 2025 | February 23, 2026 |

David M. Galemba, Deputy Attorney General, argued the cause for appellant/cross-respondent (Matthew J. Platkin, Attorney General, attorney; Jeremy M. Feigenbaum, Solicitor General, Michael L. Zuckerman, Deputy Solicitor General, and David M. Galemba and Viviana M. Hanley, Deputy Attorneys General, of counsel and on the briefs).

Michael Denny, Assistant Deputy Public Defender, argued the cause for respondent/cross-appellant (Jennifer N. Sellitti, Public Defender, attorney; Michael Denny, of counsel and on the briefs).

JUSTICE NORIEGA delivered the opinion of the Court.

In <u>Erlinger v. United States</u>, 602 U.S. 821 (2024), the United States Supreme Court held that a defendant is entitled under the Fifth and Sixth Amendments to have a jury unanimously determine, beyond a reasonable doubt, whether the defendant's past offenses were "committed on occasions different from one another" under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e). This appeal requires that we determine whether an enhanced sentence under N.J.S.A. 2C:44-3(a), New Jersey's persistent offender statute, predicated on fact-finding rendered without the benefit of a jury, could be subject to harmless error review. We hold that such error is subject to harmless error review and was harmless under the circumstances of this case. However, as presently written, N.J.S.A. 2C:44-3(a) is inconsistent with the principles announced in <u>Erlinger</u>. We therefore call upon the Legislature to revise this provision to comport with <u>Erlinger</u>'s mandate.

I.

The sentencing of defendant Jamel Carlton was premised on the following pertinent facts.

A state grand jury indicted Carlton on six counts, including first-degree aggravated sexual assault, second-degree burglary, third-degree aggravated assault, third-degree criminal restraint, and fourth-degree obstructing administration of law. Carlton was convicted after a jury trial of all counts other than obstruction of justice.

At sentencing, the State moved pursuant to N.J.S.A. 2C:44-3(a) to have Carlton sentenced as a persistent offender, exposing him to a potential life term. The State's application was based upon two prior New York convictions: (1) third-degree robbery committed in 2006; and (2) fourth-degree possession of stolen property committed in 2011. The State presented two certified judgments of conviction in support of its application. The trial court accepted those records -- without objection from the defense -- and determined Carlton was persistent-offender-extended-term eligible. The court imposed an aggregate forty-two-year term of imprisonment subject to the No Early Release Act, N.J.S.A. 2C:43-7.2, for count one, first-degree aggravated sexual assault.[1]

---

[1] Counts two and three were merged into count one; and the court sentenced Carlton to five-year concurrent sentences each on counts four and five.

B.

Carlton appealed, raising various errors regarding his trial. While his appeal was pending, the Supreme Court of the United States issued Erlinger. In Erlinger, the Court reviewed the ACCA, 18 U.S.C. § 924(e), the federal persistent offender statute, which authorizes enhanced sentences upon proof that a defendant had three or more prior convictions for violent felonies or serious drug offenses occurring on separate occasions. Id. at 825. The Court was asked to determine whether the United States Constitution permits a judge to decide whether a defendant's past offenses were committed on separate, prior occasions or whether the Fifth and Sixth Amendments require a unanimous jury to make that determination beyond a reasonable doubt. Ibid. The ACCA did not expressly assign the fact-finding role to the court or jury. See 18 U.S.C. § 924(e)(1).

Relying on its prior jurisprudence in Apprendi v. New Jersey, 530 U.S. 466 (2000), and Alleyne v. United States, 570 U.S. 99 (2013), the Court reiterated "there is no doubt what the Constitution requires in these circumstances: Virtually 'any fact' that 'increase[s] the prescribed range of penalties to which a criminal defendant is exposed' must be resolved by a unanimous jury beyond a reasonable doubt (or freely admitted in a guilty plea)." Erlinger, 602 U.S. at 834 (alteration in original) (quoting Apprendi,

4

530 U.S. at 490). The Court determined that the requirement was necessary even where the inquiry is "straightforward" or the evidence is overwhelming to a judge, finding that "[t]here is no efficiency exception to the Fifth and Sixth Amendments." Id. at 842. Notably, the majority was silent as to whether harmless error review or reversible error applies to some or all Erlinger errors.[2]

Following the Supreme Court's decision in Erlinger, Carlton argued, and the State agreed, that his enhanced sentence was unconstitutional under Erlinger, given the fact that the judge made the necessary findings concerning his persistent offender status, rather than a jury. The parties disagreed however, as to whether harmless error applied.

The Appellate Division determined that Erlinger requires a jury find, beyond a reasonable doubt, the factual predicates of a defendant's persistent offender status to be sentenced under N.J.S.A. 2C:44-3(a). State v. Carlton,

---

[2] Justice Kavanaugh, dissenting, argued that even if the Sixth Amendment required a jury to determine whether prior offenses were committed on different occasions for ACCA purposes, which he believed it did not, any error in Erlinger's case "was harmless." Erlinger, 602 U.S. at 859 (Kavanaugh, J., dissenting) (Roberts, C.J., joined as to the appropriateness of harmless error review). Justice Kavanaugh noted that, under established precedent, most constitutional errors, including Sixth Amendment errors, "can be harmless," and Erlinger's prior burglaries occurred several days apart and involved different victims and locations, leaving no reasonable doubt that the ACCA criteria were met. Id. at 860.

5

480 N.J. Super. 311, 328 (App. Div. 2024).  And, it explained, "we are not convinced the constitutional violation in this case can be 'disregarded' under the plain error rule or any other species of harmless error analysis."  Id. at 336 (quoting R. 2:10-2). The Appellate Division emphasized that in this case there was "a complete and absolute denial of the right to a jury trial on the sentence-enhancement determination."  Id. at 338-39.  Because none of the factual predicates to Carlton's persistent offender status were presented to the jury, the court determined the error could not be harmless and vacated the sentence accordingly.  Id. at 342.

Regarding the statute, the Appellate Division employed a "saving construction" conforming N.J.S.A. 2C:44-3(a) to Erlinger's mandate, effectively replacing "the court" with "the jury."  Id. at 351.  Judicial surgery was appropriate, the court reasoned, because it was "implausible" that the Legislature would have preferred the provision's "constitutional demise" over "a single word in the statutory text."  Id. at 351, 355.

We granted both parties' petitions for certification.  260 N.J. 478 (2025).

II.

Relying on United States Supreme Court precedent, the State argues that Erlinger errors are subject to harmless constitutional error review, which should resolve this case, because most constitutional errors -- including failure

6

to submit elements or sentencing factors to a jury -- can be harmless and are not subject to automatic reversal. The State further contends that this Court need not address the constitutionality of N.J.S.A. 2C:44-3(a) because the statute operates constitutionally in several scenarios, including when a jury finds the relevant facts; when a defendant waives the right to a jury or pleads guilty; and when a judge does not impose an enhancement despite making the requisite factual findings. Even if the Court does consider the statute's constitutionality, the State maintains, N.J.S.A. 2C:44-3(a) can be interpreted to comply with Erlinger, because it does not expressly preclude a jury finding, and the only judicial "surgery" required to save the statute entails replacing "it" with "a jury."

On cross-petition, Carlton contends that N.J.S.A. 2C:44-3(a) violates the Sixth Amendment under Erlinger because the statute expressly assigns the fact-finding role for persistent offender status to "the court," not "the jury," and thus cannot fairly or reasonably be construed to permit a jury determination of the factual predicates. Carlton argues that the Legislature's deliberate choice to have judges, rather than a jury, make these findings means only the Legislature -- not the courts -- has the authority to correct this constitutional defect. Carlton further asserts that the Appellate Division exceeded its authority by engaging in "judicial legislation," creating an extra-

7

statutory process to empanel a jury to decide persistent offender status in pipeline cases.[3]  According to Carlton, because the statute is unconstitutional and only legislative action can cure its defect, the extended-term sentence must be vacated and remanded for resentencing within the ordinary range.

III.

We begin with the issue on which the parties agree:  whether a constitutional error occurred in this case.

We review issues of statutory interpretation and constitutionality de novo.  See State v. Gomes, 253 N.J. 6, 16 (2023); State v. Hemenway, 239 N.J. 111, 125 (2019).  "If the plain language leads to a clear and unambiguous result, then our interpretive process is over."  State v. Gandhi, 201 N.J. 161, 177 (2010) (quoting Richardson v. Bd. of Trs., PFRS, 192 N.J. 189, 195 (2007)).  However, "where the plain language of the statute is ambiguous," the Court looks to extrinsic evidence, including legislative history, for guidance.  Ibid.  "[T]he Legislature's intent is paramount to a court's analysis . . . ."  In re Est. of Jones, 259 N.J. 584, 595 (2025) (citing DiProspero v. Penn, 183 N.J. 477, 492 (2005)).

---

[3] "Pipeline" refers to all cases pending on direct appeal or not yet final -- that is, those that have not reached final disposition by the time a new rule or decision is issued.  State v. Wessells, 209 N.J. 395, 412 (2012); see also Griffith v. Kentucky, 479 U.S. 314, 327-28 (1987).

Here, the plain language of the persistent offender statute must be interpreted in accordance with fundamental constitutional protections, which govern how facts that increase punishment may be established. We review those principles now.

A.

The Due Process Clause requires "proof beyond a reasonable doubt of every fact necessary to constitute the crime with which [one] is charged" prior to a person's conviction. In re Winship, 397 U.S. 358, 364 (1970). Under the Sixth Amendment, defendants are entitled to have such proof presented to a jury. U.S. Const. amend. VI.

In Almendarez-Torres v. United States, the United States Supreme Court held that the fact of a defendant's prior commission of a serious crime is a sentencing factor related to recidivism, not an element of a criminal offense that must be found by a jury beyond a reasonable doubt. 523 U.S. 224 (1998). The statute at issue, 8 U.S.C. § 1326(b)(2), allowed for an increased maximum sentence based on a prior aggravated felony conviction without specifying who -- the court or jury -- should make that finding. See id. at 229. The Court concluded that a judge could determine the existence of a prior conviction as part of the sentencing process. Id. at 226-27, 241.

Two years after <u>Almendarez-Torres</u>, the Supreme Court revisited the issue in its review of a New Jersey hate crime statute, N.J.S.A. 2C:44-3(e). <u>Apprendi</u>, 530 U.S. 466. In <u>Apprendi</u>, however, the Court reached a different conclusion: it held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." <u>Id.</u> at 490. In explaining its departure from <u>Almendarez-Torres</u>, the Court referred to its prior holding as "an exceptional departure from the historic practice" of a trial by jury and a "jury verdict based on proof beyond a reasonable doubt." <u>Id.</u> at 478, 487. A decade later, the Supreme Court held that the same principle applied "with equal force to facts increasing the mandatory minimum" sentence. <u>Alleyne</u>, 570 U.S. at 112.

Building on this foundation, the Supreme Court's decision in <u>Blakely v. Washington</u> further cemented the constitutional mandate that any fact increasing the penalty for a crime must be submitted to a jury and proven beyond a reasonable doubt. 542 U.S. 296, 313 (2004). The Court in <u>Blakely</u> determined that it was unconstitutional for the judge to make a finding that the petitioner "had acted with 'deliberate cruelty'" because "[t]he facts supporting [it] were neither admitted by [the defendant] nor found by a jury." <u>Id.</u> at 303. Rather, the Court reasoned, "every defendant has the <u>right</u> to insist that the

10

prosecutor prove to a jury all facts legally essential to the punishment." Id. at 313.

Bridging the analytical divide between Almendarez-Torres and the Apprendi/Blakely line of cases, the Supreme Court's decision in Erlinger squarely confronts the constitutionality of judicial fact-finding related to prior convictions that increase sentencing exposure. Erlinger cements and clarifies the limited reach of the Almendarez-Torres exception and reaffirms Apprendi and Blakely, holding that even "seemingly straightforward" factual determinations relating to the nature or circumstances of prior convictions are reserved for the jury when those facts increase a defendant's sentencing exposure. Erlinger, 602 U.S. at 849.

The Court in Erlinger reviewed the ACCA, which mandates an enhanced penalty for defendants with three prior violent felony or serious drug convictions "committed on occasions different from one another." Id. at 825 (quoting 18 U.S.C. § 924(e)(1)). In that case, the sentencing judge, rather than a jury, determined that the defendant's prior offenses occurred on separate occasions, resulting in a mandatory minimum fifteen-year sentence and exposure to life imprisonment. Id. at 836. The ACCA itself did not specify whether a judge or jury should make the "separate occasions" determination. See id. at 825.

11

Rejecting the government's argument that the "fact-of-prior-conviction" exception justified judicial fact-finding, the Supreme Court held this process unconstitutional. Id. at 836-38. The Court reaffirmed that "[t]he Fifth and Sixth Amendments placed the jury at the heart of our criminal justice system," demanding that any factual determination that increases punishment -- however "seemingly straightforward" -- must be resolved by a unanimous jury beyond a reasonable doubt. Id. at 831, 834, 849 (citing Apprendi, 530 U.S. at 490). Specifically rejecting a call to apply Almendarez-Torres, the Court underscored it as a "narrow exception," confined strictly to the existence of a prior conviction, not to the surrounding facts or circumstances related to the prior conviction. Id. at 836-38 (quoting Alleyne, 570 U.S. at 111 n.1).

Critically, in Erlinger, the judge decided the disputed factual question -- whether the defendant's prior offenses, which were committed several days apart, were committed on different occasions -- and that decision "had the effect of increasing both the maximum and minimum sentences [the defendant] faced." Id. at 835 (emphasis omitted). The Court held that the Sixth Amendment requires such questions to be submitted to a jury. Ibid.

12

B.

N.J.S.A. 2C:44-3 sets forth the criteria for imposing an extended term of imprisonment in New Jersey. The statute provides:

> The <u>court</u> may, upon application of the prosecuting attorney, sentence a person who has been convicted of a crime of the first, second or third degree to an extended term of imprisonment if <u>it finds</u> one or more of the grounds specified in subsection a., b., c., or f. of this section.
>
> [N.J.S.A. 2C:44-3 (emphases added).]

Subsection (a), specifically at issue in this case, addresses when a defendant may be sentenced as a persistent offender:

> The defendant has been convicted of a crime of the first, second or third degree and is a persistent offender. A persistent offender is a person who at the time of the commission of the crime is 21 years of age or over, who has been previously convicted on at least two separate occasions of two crimes, committed at different times, when he was at least 18 years of age, if the latest in time of these crimes or the date of the defendant's last release from confinement, whichever is later, is within 10 years of the date of the crime for which the defendant is being sentenced.
>
> [N.J.S.A. 2C:44-3(a).]

Taken together, those provisions constitute New Jersey's persistent offender statute.

By its terms, N.J.S.A. 2C:44-3 provides that "the <u>court</u> may, upon application of the prosecuting attorney, sentence a person who has been

13

convicted of a crime of the first, second or third degree to an extended term of imprisonment if <u>it finds</u> one or more of the grounds specified in subsection a., b., c., or f. of this section." (emphases added).

Official commentary explains that the assignment of fact-finding responsibility to "the court" in New Jersey's persistent offender statute mirrors the Model Penal Code, which treated such determinations as related to sentencing rather than to guilt or innocence. <u>See</u> 2 <u>N.J. Penal Code: Final Report</u> 329 (Crim. L. Revision Comm'n 1971) (explaining that "[t]he Code calls for court determination" of factual predicates to extended terms because, as under the Model Penal Code, "the issue bears entirely on the nature of the sentence, rather than on guilt or innocence," and that "questions of sentence otherwise are for determination by the Court"). Indeed, N.J.S.A. 2C:44-3 marked a deliberate departure from New Jersey's prior persistent offender statute, the Habitual Offender Act, which provided for a jury trial on the finding of prior conviction. <u>See</u> N.J.S.A. 2A:85-13 (1978) (repealed by <u>L.</u> 1978, <u>c.</u> 95) (providing that, if a defendant alleged to be subject to an extended sentence based on prior convictions "refuses to plead or remains silent or pleads not guilty" to those allegations, "a jury shall be impanelled" to resolve the question, unless the defendant waives in writing the right to a jury determination).

14

IV.

All agree that in this case, the judge, rather than the jury, found the predicate facts under subsection (a) that increased defendant's sentencing exposure.  We hold that this federal constitutional error is subject to harmless error review and was harmless in this case.  Nonetheless, we urge the Legislature to amend N.J.S.A. 2C:44-3.

A.

1.

Federal constitutional errors are generally subject to harmless error review.  In Chapman v. California, the Supreme Court recognized that not all constitutional errors require automatic reversal, stating that some errors are, "in the setting of a particular case," "so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless."  386 U.S. 18, 22 (1967).  However, before a constitutional error can be considered harmless, the court must be convinced "beyond a reasonable doubt" that the error did not affect the outcome.  Id. at 24.

Only a "very limited class of cases" involves so-called "structural" errors, which require automatic reversal regardless of whether the error affected the outcome.  Neder v. United States, 527 U.S. 1, 8 (1999) (quoting Johnson v. United States, 520 U.S. 461, 468 (1997)).  Structural error review is

15

reserved for errors -- such as the complete denial of counsel -- that "necessarily render a trial fundamentally unfair." Ibid. (quoting Rose v. Clark, 478 U.S. 570, 577 (1986)). In determining whether an error is structural, the strength of the evidence against a defendant is irrelevant; structural error is concerned with protecting basic rights, not with the correctness of a particular result. Id. at 34 (Scalia, J., concurring in part).

The Supreme Court has made clear that most constitutional errors do not fall into the structural category and are thus subject to harmless error review. See Arizona v. Fulminante, 499 U.S. 279, 306 (1991) (explaining that "most constitutional errors can be harmless"); Neder, 527 U.S. at 8 ("[T]here is a strong presumption that any other [constitutional] errors . . . are subject to harmless-error analysis." (alteration in original) (quoting Rose, 478 U.S. at 579)). This Court has followed that approach. See State v. Camacho, 218 N.J. 533, 547, 551 (2014) (reviewing and applying the United States Supreme Court's distinction between harmless- and structural-error review).

Notably, in Washington v. Recuenco, the Supreme Court held that the failure to submit a sentencing factor to the jury, an Apprendi-style error, is not structural and does not require automatic reversal. 548 U.S. 212, 222 (2006). There, the trial court imposed a sentencing enhancement based on its own fact-finding, which the Washington Supreme Court deemed structural error under

Blakely.  Id. at 216.  The Supreme Court reversed, reasoning that "sentencing factors, like elements, [are] facts that have to be tried to the jury and proved beyond a reasonable doubt," id. at 220 (citing Apprendi, 530 U.S. at 483-84), but that such errors are subject to harmless error review, id. at 222.

Accordingly, errors in failing to submit sentencing factors or elements to a jury, as in Apprendi and its progeny, are presumptively subject to harmless error analysis, not automatic reversal.  See ibid.  And although the Supreme Court has not addressed harmless error review in Erlinger's wake, courts have reviewed Erlinger issues for harmless error and considered whether the prosecution had established beyond a reasonable doubt that the outcome would have been the same absent the constitutional violation.  See, e.g., United States v. Campbell, 122 F.4th 624, 630 (6th Cir. 2024), cert. denied, ___ U.S. ___ (Oct. 6, 2025); United States v. Brown, 136 F.4th 87, 94-95 (4th Cir. 2025), cert. denied, ___ U.S. ___ (Nov. 10, 2025) (applying harmless error review to an Erlinger error relying on the United States Supreme Court's "observation that an Erlinger error is merely a type of Apprendi error"; "Recuenco established that Apprendi errors of the type found in Erlinger are subject to harmless-error review"; and "[n]othing in Erlinger purported to change or undermine that holding"); United States v. Valencia, 137 F.4th 331, 336 (5th Cir. 2025) (applying harmless error review to an Erlinger error on remand

17

from the United States Supreme Court); <u>United States v. Johnson</u>, 114 F.4th 913, 917 (7th Cir. 2024) (applying harmless error review to an <u>Erlinger</u> error); <u>United States v. Bowling</u>, 135 F.4th 1125, 1126 (8th Cir. 2025) (holding that "the failure to submit a sentencing factor to a jury" post-<u>Erlinger</u> "is subject to harmless-error analysis"); <u>United States v. Rivers</u>, 134 F.4th 1292, 1305 (11th Cir. 2025) ("[W]e hold, as all our sister circuits to address the issue have, that we review <u>Erlinger</u> errors for harmlessness.").

2.

The Appellate Division characterized the defect in <u>Carlton</u> as something akin to structural error on the ground that no jury ever made the requisite finding, distinguishing it from cases involving flawed jury instructions or defective verdict forms. 480 N.J. Super. at 339. In its assessment, the absence of any jury submission constituted a complete deprivation of the jury right. <u>Ibid.</u>

We disagree. Here, the relevant facts are undisputed, the sentencing court's reasoning fully articulated, and the record demonstrates, beyond any reasonable doubt, the sole conclusion a jury could have reached had <u>Erlinger</u> been in place at the time of sentencing. This is not, as the Appellate Division suggested, a case about judicial efficiency or institutional shortcuts. Rather, it

18

is one in which the record provided meaningful appellate review, and only one outcome would have been possible at trial.

The trial court relied on documentary evidence presented by the State and undisputed by the defense. The uncontested facts established that Carlton was born in 1985 and was over the age of twenty-one at the time of his convictions, satisfying the age requirement at all relevant times. The record showed two prior New York felony convictions, a third-degree robbery in 2007 and a fourth-degree possession of stolen property in 2011, demonstrating that these offenses indisputably were committed at different times when Carlton was over eighteen years old. The dates of conviction and release, with a sentence of two to four years completed in 2014, together with the current offense occurring in 2018, established the "within 10 years" element. Defense counsel also conceded all the predicate facts required by N.J.S.A. 2C:44-3(a). Under these circumstances, and in the "setting of [this] particular case," see Chapman, 386 U.S. at 22, we conclude that the error is harmless.

Applying the harmless error framework, moreover, serves several important ends by ensuring the Legislature's intent is effectuated and respecting the separation of powers.

That is not to say that harmless error review will resolve every post-Erlinger claim. If, in contrast to this case, a judge makes the determination

based on an ambiguous record, where, for example, the prior offenses were not indisputably committed at different times, harmless error review may be inappropriate.

B.

Because we hold the constitutional Erlinger error in this case was harmless beyond a reasonable doubt, we do not reach the Appellate Division's conclusion that judicial surgery could be used to conform the persistent offender statute to Erlinger.

As earlier noted, New Jersey's persistent offender statute, as presently written, is inconsistent with the principles announced in Erlinger.[4] We therefore call upon the Legislature to examine the statute carefully at the earliest possible opportunity.

---

[4] This Court's holding in State v. Pierce that a judge's determination of persistent offender status under the "prior conviction" exception is constitutionally permissible conflicts with Erlinger. 188 N.J. 155, 171-73 (2006). The Appellate Division in this case declared the holding in Pierce to have been abrogated by Erlinger. See Carlton, 480 N.J. Super. at 317 ("It is undisputed . . . that Erlinger abrogates New Jersey Supreme Court precedent [i.e., Pierce,] that embraced a contrary interpretation of the Apprendi doctrine . . . ."). We agree that Pierce has been abrogated insofar as it directs a sentencing judge to find, without a jury, the predicate facts required for persistent offender status, including whether prior offenses were committed on separate occasions. Even so, Pierce remains intact on issues outside the Sixth Amendment fact-finding context, including the framework for judicial discretion at sentencing once persistent offender eligibility is constitutionally established.

20

Urgency exists because harmless error review may not always be a tenable approach. Continued use of the persistent offender statute as written could engender confusion for trial courts, prosecutors, and defense counsel, particularly when the immediate attention to <u>Erlinger</u>, and this case, has faded. If the persistent offender statute is not amended, a trial judge down the road may confront a persistent offender motion with new counsel on both sides and may turn to the statutory text but find no guidance consistent with <u>Erlinger</u>'s requirements. In short, harmless error review is no perfect or permanent solution to the uncertainty created by a statutory scheme that no longer reflects controlling United States Supreme Court doctrine.

Accordingly, we urge the Legislature to promptly amend the persistent offender statute so that it comports with the United States Supreme Court's precedent and provides clear direction to the courts and practitioners charged with applying it.

V.

The judgment of the Appellate Division is reversed on the sole issue before the Court, and the original sentence imposed is reinstated in accordance with this opinion.

21

CHIEF JUSTICE RABNER and JUSTICES PATTERSON, PIERRE-LOUIS, WAINER APTER, FASCIALE, and HOFFMAN join in JUSTICE NORIEGA's opinion.